Esra A. Hudson
Stephanie A. Roeser
Manatt, Phelps & Phillips LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

*Attorneys for Movant Blake Lively*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLAKE LIVELY,<br><br>    Movant,<br><br>v.<br><br>TERA HANKS, ASHMI ELIZABETH DANG, AHMED MUSIOL, MITZ TOSKOVIC, AJ MARBORY, JENNIFER BENSON, SHEKINAH REESE, and JARRIESSE BLACKMON,<br><br>    Respondents. | CASE NO.: 2:25-mc-00055<br><br>**JOINT STIPULATION OF BLAKE LIVELY'S MOTION TO COMPEL COMPLIANCE WITH THIRD-PARTY SUBPOENAS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45**<br><br>Date: July 11, 2025<br>Time: 8:30 a.m.<br>Place: Courtroom TBD |

Blake Lively, by and through her counsel, Manatt, Phelps & Phillips LLP, hereby submits this Motion and Joint Stipulation in support of her motion to compel compliance with subpoenas issued to Ashmi Elizabeth Dang, Ahmed Musiol, Mitz Toskovic, Tera Hanks, AJ Marbory, Jennifer Benson, Shekinah Reese, and Jarriesse Blackmon, third-party witnesses in the consolidated cases captioned *Lively v. Wayfarer Studios*, *et al.*, 1:24-cv-10049 (S.D.N.Y.) (the "Lively Action") and *Wayfarer Studios LLC v. Lively, et al.*, 1:25-cv-00449 (S.D.N.Y.) (the "Wayfarer Action") (together, the "Actions") filed in the United States District Court for the Southern District of New York.[1]

DATED: June 20, 2025  MANATT, PHELPS & PHILLIPS LLP

By: /s/ Esra A. Hudson
 Esra A. Hudson
 Stephanie A. Roeser
 *Attorneys for Movants*

---

[1] A copy of the operative complaint in the Lively Action (the "Lively Complaint") is attached as Exhibit A to the accompanying Declaration of Esra A. Hudson ("Hudson Decl."), and a copy of the operative complaint in the Wayfarer Action (the "Wayfarer Complaint") is attached as Exhibit B to the Hudson Decl.

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ..................................................................................................1
   A. Ms. Lively's Introductory Statement. ......................................................1
   B. The Wayfarer Third Parties' Introductory Statement. ...........................4

II. ARGUMENT.........................................................................................................5
   A. Ms. Lively's Position. ................................................................................5
      1. This Court Should Transfer the Motion to the Issuing Court in the Southern District of New York..............................5
      2. Alternatively, the Court Should Compel the Wayfarer Third Parties to Fully Comply with the Subpoenas...................7
   B. The Wayfarer Third Parties' Position. ...................................................10
      1. The Court Should Not Transfer to the Southern District of New York......................................................................10
      2. The Court Need Not, and Should Not, Enter an Order Compelling Compliance with the Subpoenas..........................12

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Agincourt Gaming, LLC v. Zynga, Inc.*,
   2014 WL 4079555 (D. Nev. Aug. 15, 2014).................................................................12

*E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*,
   2015 WL 12746706 (C.D. Cal. Oct. 23, 2015) ...........................................................5, 10

*Helping Hand Caregivers Ltd. v. Darden Corp.*,
   2016 WL 10987313 (C.D. Cal. Feb. 17, 2016) .................................................................6

*Hope Med. Enters., Inc. v. Fagron Compounding Servs., LLC*,
   2021 WL 753566 (C.D. Cal. Jan. 25, 2021).......................................................................3

*In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig.*,
   113 F. Supp. 3d 286 (D.D.C. 2015)..................................................................................11

*Le v. Zuffa, LLC*,
   2017 WL 11632246 (C.D. Cal. Mar. 17, 2017)..................................................................6

### RULES

Fed. R. Civ. P. 45 ...................................................................................................5, 10, 11

Fed. R. Civ. P. 45(f) ...................................................................................................5, 6, 10

# I. INTRODUCTION

## A. Ms. Lively's Introductory Statement.

Ms. Lively initiated litigation in the Southern District of New York in connection with sexual harassment she and others experienced while filming the movie "It Ends With Us" (the "Film") and subsequent retaliation designed to "bury" her for speaking out. Ms. Lively brought her claims against Wayfarer Studios LLC ("Wayfarer"), a production company that co-financed and produced the Film and was the employer of all cast and crew on set, including Ms. Lively (Lively Complaint ¶ 57), as well as Justin Baldoni, the co-founder and co-chairman of Wayfarer who co-starred in, directed, and served as a producer of the Film (*id.* ¶ 58); Jamey Heath, the CEO and former President of Wayfarer (*id.* ¶ 59); and several other Wayfarer Executives, affiliated entities, and public relations professionals (*id.* ¶¶ 60–66) (together with all Defendants, the "Wayfarer Parties").[2]

Ms. Lively alleges that she and other employees, cast, and crew of the Film were the subject of unwelcome and inappropriate behavior by Mr. Baldoni and Mr. Heath during production of the Film (*id.* ¶¶ 75–109), and that the Wayfarer Parties retaliated against Ms. Lively for raising concerns about sexually harassing and other inappropriate conduct on set by initiating a "social manipulation" campaign (the "Retaliation Campaign") (*id.* ¶¶ 183–193). Shortly after Ms. Lively filed the Lively Action, the Wayfarer Parties filed their own action against Ms. Lively and others, including her husband, Mr. Reynolds, which is subject to multiple motions to dismiss. Discovery in the Actions is ongoing, and the parties have exchanged discovery requests and served numerous third-party subpoenas.

In early March 2025, Ms. Lively served third-party subpoenas on Tera Hanks, Mitz Toskovic, Ahmed Musiol, Ashmi Elizabeth Dang, Shekinah Reese, Jariesse

---

[2] For purposes of this Motion, Wayfarer Parties also includes The Agency Group PR LLC, who is a defendant in the Lively Action but not a plaintiff in in the Wayfarer Action.

Blackmon, AJ Marbory, and Jennifer Benson (the "Wayfarer Third Parties").[3] Each of the Wayfarer Third Parties is represented by the same counsel that is representing Wayfarer in the Actions, and all but one are current or former executives or employees of Wayfarer: Tera Hanks (President of Wayfarer), Ashmi Elizabeth Dang (Head of Marketing of Wayfarer); Shekinah Reese (Mr. Heath's assistant); Mitz Toskovic (Wayfarer employee); AJ Marbory (Mr. Baldoni' former assistant); Ahmed Musiol (Wayfarer co-founder and executive producer); Jarriesse Blackmon (Wayfarer executive assistant); and Jennifer Benson (a health coach that Mr. Baldoni recommended to Ms. Lively, who may have information relevant to Ms. Lively's harassment allegations).

Each of the Wayfarer Third Parties requested extensions, and Ms. Lively agreed to new deadlines: April 16 for Hanks, Toskovic, and Musiol; April 21 for Blackmon; and April 23 for Dang, Reese, Marbory, and Benson. These deadlines have passed, yet none of the Wayfarer Third Parties has produced a single document. Instead, they served only responses and objections stating they would conduct a reasonable search for responsive documents.

Counsel for Ms. Lively conferred with the Wayfarer Third Parties' counsel for weeks to try to understand their collection efforts, including sources and whether these would include personal devices. *See* Hudson Decl., Ex. K. But the Wayfarer Third Parties failed to answer basic questions, stalling discovery efforts and compromising Ms. Lively's ability to gather relevant information. *Id.* In their final correspondence, the Wayfarer Third Parties stated they are relying on Wayfarer to produce their "professional materials" that are located in Wayfarer's repositories, and will only individually produce "any remaining responsive and non-privileged materials located on their personal devices." *Id.* But as Ms. Lively explained in the

---

[3] Copies of the subpoenas served on the Wayfarer Third Parties (the "Subpoenas") are attached as Exhibits C through J to the Hudson Decl.

conferral, she has documents demonstrating that the Wayfarer Third Parties conducted a substantial amount of their work, including work related to the Retaliation Campaign, via text and other messaging applications on their personal devices (and not exclusively through company emails). Tellingly, the Wayfarer Third Parties have not articulated any substantive objection to producing all responsive documents in their possession, custody, and control—including from their personal devices.

Ms. Lively moved to compel the Wayfarer Third Parties' compliance with the subpoenas in the underlying Action. *See* ECF No. 200.[4] The Wayfarer Third Parties responded by objecting on venue grounds only and did not raise any substantive objections. ECF No. 215. They argued that this motion could only be brought in this Court, which is the district of compliance. *Id.* The Wayfarer Third Parties repeated their assertion that Wayfarer will produce documents that "reside" on its servers, and that the Wayfarer Third Parties will produce other documents "as soon as reasonably practicable." *Id.* These representations lack the necessary details about their collection process—including with respect to personal devices.

The deadline for substantial completion of document productions is July 1, 2025, with all fact discovery to be completed by August 14, 2025. Still, ***the Wayfarer Third Parties*** (all of whom are represented by Wayfarer's counsel) ***have yet to produce a single document***. To avoid further delay and prejudice to Ms. Lively, this Court, the district of compliance, should transfer the present Motion to the issuing court (the Southern District of New York) or, alternatively, order the Wayfarer Third Parties to comply with the Subpoenas and produce documents within ten days of the order being issued. Additionally, Ms. Lively requests expedited consideration of this Motion in view of the above deadlines in the Actions.

---

[4] Ms. Lively respectfully requests that the Court take judicial notice of the documents filed in the Lively Action referenced herein. *See Hope Med. Enters., Inc. v. Fagron Compounding Servs., LLC*, 2021 WL 753566, at *11 (C.D. Cal. Jan. 25, 2021). All "ECF" citations are to the Lively Action.

### B. The Wayfarer Third Parties' Introductory Statement.

Third parties Tera Hanks, Mitz Toskovic, Ahmed Musiol, Ashmi Elizabeth Dang, Shekinah Reese, Jariesse Blackmon, AJ Marbory, and Jennifer Benson (the "Wayfarer Third Parties") intend to fully comply with the subpoenas at issue, subject to their timely served objections. The Wayfarer Third Parties have apprised Movant Blake Lively ("Lively") multiple times that they have been meticulously gathering, searching, imaging, and preparing documents responsive to the eight subpoenas and 177 requests in order to meet the production deadlines set in a case in which they are not even parties. Yet Lively insists on pursuing motion practice in multiple Courts, seeking unspecified relief, without as much as identifying a single request at issue.

Rather than discuss actual requests, Lively first demands that this Court transfer her motion compel to the Southern District of New York where her action against Wayfarer is pending. However, the Wayfarer Third Parties do not consent to transfer, and Lively has not shown any evidence of exceptional circumstances requiring transfer. More importantly, Lively has already filed a motion to compel compliance in the Southern District of New York in an effort to usurp this Court's jurisdiction over these same subpoenas. The Southern District of New York rejected that effort in a June 16, 2025 order denying that motion and holding "Lively's motion is properly brought in the districts where compliance is required."

Moreover, although Lively asks this Court to order the Wayfarer Third Parties to immediately produce documents, she fails to mention that the broad requests for communications require the Wayfarer Third Parties to image and search numerous separate personal cell phones, containing both responsive information but also immensely private and personal information to which Lively is not entitled. The Wayfarer Third Parties are in the midst of the time intensive and burdensome task of processing the information to comply with the subpoenas without resistance and have agreed to produce responsive, non-privileged documents as soon as practicable.

Nevertheless, and despite the Wayfarer Third Parties' diligent efforts to search for and produce documents, and provision of an estimated date of production, Lively has initiated unnecessary motion practice in three different courts, including this one, to compel compliance by non-parties that are already complying with the subpoenas.

Further, while Lively styles her motion as a motion to compel compliance, she fails to clearly explain what relief she actually seeks from the Court. Lively does not identify the particular discovery requests she seeks to compel or even include the Wayfarer Third Parties' objections. It is unclear how Lively expects this Court to issue a ruling on requests for documents in a subpoena without such information. Nor does Lively cite any authority regarding her request to compel compliance, but merely argues that this Court should transfer the motion to the New York Court adjudicating the Wayfarer Action, despite each subpoena requiring compliance in this district. In light of these failings and since the Wayfarer Parties have agreed to produce non-privileged, responsive documents subject to their objections, the Court need not and should decline to enter an order compelling compliance.

## II. ARGUMENT

### A. Ms. Lively's Position.

#### 1. This Court Should Transfer the Motion to the Issuing Court in the Southern District of New York

This Court should transfer Ms. Lively's Motion to Compel to the Southern District of New York because there are "exceptional circumstances" to do so. *See* Fed. R. Civ. P. 45; *see also E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*, 2015 WL 12746706, at *2 (C.D. Cal. Oct. 23, 2015). Under the Advisory Committee notes, "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation …." Fed. R. Civ. P. 45(f). "Courts have also considered a number of factors relating to the underlying litigation including the 'the complexity, procedural posture, duration of pendency, and the nature of the issues

pending before, or already resolved by, the issuing court in the underlying litigation.'" *E4 Strategic Sols.*, 2015 WL 12746706, at *3 (citation omitted).

These factors are present here and support transferring this Motion. Judge Liman in the Southern District of New York has been presiding over the Actions since they began, is familiar with the full scope of issues involved, and is currently poised to resolve the parties' motions to dismiss along with discovery motions including with respect to subpoenas issued to third parties. *See, e.g.*, ECF Nos. 87, 106, 133, 145, 200, 211. Thus, efficient management of the underlying litigation and judicial economy strongly counsel in favor of transfer. *See Helping Hand Caregivers Ltd. v. Darden Corp.*, 2016 WL 10987313, at *2-3 (C.D. Cal. Feb. 17, 2016) (transferring subpoena-related motion because the motion would "be better decided by the court with control over the disposition of the underlying case" and the transferee court was "familiar with some [of] the topics listed in the subpoenas," meriting a finding of "exceptional circumstances"); *Le v. Zuffa, LLC*, 2017 WL 11632246, at *3-4 (C.D. Cal. Mar. 17, 2017) (transferring motion to quash because of the transferee court's "far superior familiarity with the underlying issues" and where the motion to quash "depend[ed] heavily on determinations of whether the requested documents are relevant to the underlying case."). Judge Liman's familiarity with the issues underlying the Subpoena is particularly critical here to allow for swift resolution of this Motion in accordance with the case's expedited timeline, which contemplates substantial completion of document discovery on July 1, close of fact discovery on August 14, and a trial date of March 9, 2026. ECF Nos. 45, 58. For these reasons, exceptional circumstances warrant transferring this Motion to the Southern District of New York. *See* Fed. R. Civ. P. 45(f).

## 2. Alternatively, the Court Should Compel the Wayfarer Third Parties to Fully Comply with the Subpoenas.

The Wayfarer Third Parties do not contest that Ms. Lively validly served the Subpoenas, which each list a place of compliance located within this Court's jurisdiction. Each of the Subpoenas seek information that is plainly relevant to the Actions, including information about Ms. Lively and Mr. Reynolds; the Actions; the Film and its marketing; complaints and grievances raised by Ms. Lively in connection with the Film; harassment, discrimination, workplace misconduct, or other inappropriate behavior related to the Film, Mr. Baldoni, or Mr. Heath; the Retaliation Campaign targeting Mr. Baldoni and Ms. Lively's public images; the public relations services provided by Defendants The Agency Group PR LLC and Melissa Nathan; the public relations services provided by Defendants Jed Wallace and Street Relations, Inc.; phone records relating to the allegations in the Lively Complaint; and the Wayfarer Third Parties' decision to hire the same counsel as Wayfarer. *See generally* Exs. C–J.

Whether Ms. Lively can obtain these documents and communications will affect her ability to prove that she experienced inappropriate and unwelcome misconduct while on the set of the Film, that she raised concerns about such misconduct, and that the Wayfarer Parties coordinated the Retaliation Campaign against her for doing so. Among other topics, these documents and communications will specifically evidence Wayfarer's knowledge about the misconduct on the Film set and how it and other Wayfarer Parties reacted to Ms. Livley's reports, how and when the Retaliation Campaign was formulated, the web of individuals involved in that campaign, and how social media was manipulated in furtherance thereof. The Wayfarer Third Parties are executives and employees of Wayfarer (many of whom worked directly with Mr. Baldoni and Mr. Heath), and text messages already obtained show that certain of them were directly involved in the Retaliation

Campaign. These individuals are thus likely to possess information that is not only relevant, but essential to Ms. Lively's claims and defenses. Indeed, the Wayfarer Parties admitted as much by identifying the Wayfarer Third Parties in their Initial Disclosures.

In any event, it is Ms. Lively's understanding that the Wayfarer Third Parties do not actually contest relevancy. And after extensive conferrals, the Wayfarer Third Parties' counsel withdrew numerous other objections and agreed to produce all relevant, non-privileged materials in response to the Subpoenas. *See* Ex. K. Indeed, in their recent correspondence filed in the underlying Actions, the Wayfarer Third Parties only objected on the basis of venue in the Southern District of New York and did not raise any substantive objections or defenses to the Subpoenas. *See generally*, Lively Action, ECF No. 215. Accordingly, there are no active disputes regarding whether the Subpoenas were validly served, whether the Subpoenas seek relevant information, or whether the Subpoenas are subject to any other objections. All that is left for the Wayfarer Third Parties to do is comply and produce documents, including from their personal devices.

But even with the extensions that Ms. Lively provided the Wayfarer Third Parties, the deadlines for compliance have long since passed, and ***none of the Wayfarer Third Parties has produced a single document***. The Wayfarer Third Parties are not excused from complying with the Subpoenas in a timely manner merely because they are relying on Wayfarer to search for and produce their documents. Indeed, any negotiations between Ms. Lively and Wayfarer and extensions provided to Wayfarer to produce its own documents in discovery are independent from and inapplicable to the Wayfarer Third Parties' obligations to respond to their Subpoenas.

What is more, counsel for the Wayfarer Third Parties have refused to answer Ms. Lively's basic questions regarding the Wayfarer search, including what

documents and repositories (including personal devices) are being searched. Although all of the Wayfarer Third Parties are represented by Wayfarer's counsel, it is unclear if all of the Third Parties were definitively employees of Wayfarer—including Mr. Baldoni's health coach, Jennifer Benson, and Mr. Heath's assistant, Shekhinah Reese—and therefore whether Wayfarer would even have possession of their documents. For those Wayfarer Third Parties who were definitively employed by Wayfarer, it is even unclear which of these Third Parties are *current* Wayfarer employees such that all of their documents and communications would be within Wayfarer's custody and control. As such, the Wayfarer Third Parties have left Ms. Lively completely in the dark as to whether she should expect Wayfarer to provide documents for all of the Wayfarer Third Parties or only some of them, and the extent of the documents to be provided by Wayfarer.

Aside from Wayfarer and the Wayfarer Third Parties' arrangement for Wayfarer to search for and collect the Wayfarer Third Parties' "professional materials" from Wayfarer's own repositories, the Wayfarer Third Parties have no reason for not producing documents and communications from their own personal devices. Rather, the Wayfarer Third Parties have implied that they will later produce "any remaining responsive and non-privileged materials located on their personal phones" after Wayfarer has searched its own repositories. Ex. K. But this again signifies that the Wayfarer Third Parties—in cooperation with Wayfarer—are seeking to delay and prolong discovery. Indeed, there is no reason that the Wayfarer Third Parties can or should wait to review documents and communications contained on their personal devices (including, for example, directly responsive text communications that would not be stored in Wayfarer repositories). Their refusal to do so implies that such documents and communications will not be provided to Ms. Lively until an unknown time in the future—when almost two months have already

passed since the original compliance date, and with less than one month remaining until the deadline for the parties to produce documents.

Wayfarer and the Wayfarer Third Parties' arrangement has necessarily resulted in an improper attempt to seek to extend the Third Parties' deadline for compliance and slow roll discovery. Wayfarer's decision to insert itself (and its counsel) into the process of responding to the Subpoenas is not an excuse to delay or otherwise evade compliance. Accordingly, the Court should compel the Wayfarer Third Parties, whether through the Wayfarer Third Parties themselves or through Wayfarer, to produce all relevant, non-privileged material in the Wayfarer Third Parties' possession, custody, or control that is responsive to the Subpoenas, whether found through Wayfarer's repositories or the Third Parties' personal devices within ten days of the order being issued.

### B. The Wayfarer Third Parties' Position.

#### 1. The Court Should Not Transfer to the Southern District of New York.

The Court should not transfer the instant Motion to the Southern District of New York because doing so would impose an unnecessary burden on third parties to the underlying action. The Southern District of New York has already denied Lively's motion to compel compliance in that district on the basis that Lively's motion must be brought in this district.[5]

Even if the Southern District would accept a transfer, Rule 45 of the Federal Rules of Civil Procedure permits the transfer of subpoena-related motions from the court where compliance only where (1) the person subject to the subpoena consents; or (2) the court finds exceptional circumstances. *E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*, No. SAMC1500022DOCDFMX, 2015 WL 12746706, at *2 (C.D. Cal.

---

[5] The Wayfarer Third Parties request the Court take judicial notice of Dkt. No. 339 [order denying motion to compel compliance of Wayfarer Third Parties to Subpoenas] in *Lively v. Wayfarer Studios. LLC, et al.*, Southern District of New York Case No. 24-cv-10049.

Oct. 23, 2015); Fed. R. Civ. P. 45(f). None of the Wayfarer Third Parties consents to transfer of this motion to the Southern District of New York.

As for any claim of exceptional circumstances, "the proponent of transfer bears the burden of showing that such circumstances are present." Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. The Advisory Committee Notes make clear: "The *prime concern* should be avoiding burdens on local nonparties subject to subpoenas, and it should *not* be assumed that the issuing court is in a superior position to resolve subpoena-related motions." *Id.* (emphases added). Some of the circumstances that *may* justify transfer are specified: "[T]ransfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Id.* The Advisory Committee Notes conclude: "Transfer is appropriate *only* if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.* (emphasis added).

Here, Lively can point to no risk of inconsistent outcomes, or any likelihood of the same issues arising in discovery in many districts, as contemplated by the Advisory Committee Notes. This is not a case in which the interests weighing in favor of transfer so clearly outweigh the interests of the Wayfarer Third Parties in having a local court determine their rights that exceptional circumstances can be said to exist. For example, this is not a case in which the underlying discovery dispute involves complex issues stemming from events in the Southern District of New York; nor has the case already been pending in that District for many years spanning multitudes of orders resolving significant procedural or discovery disputes. *See, e.g.*, *In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015). On the contrary, this case has not been pending even seven months, and the issue at stake in this Motion—whether it is necessary to order compliance

from parties who are already complying with subpoenas in good faith—is straightforward. The Court can and should decide this Motion, and transfer to the Southern District of New York is unnecessary and not justified by interests outweighing the burden imposed on the Wayfarer Third Parties by requiring them to litigate in a court located across the country.

Lively also ignores that the Wayfarer Third Parties have a significant interest in having the question of their compliance with the Subpoenas be decided by the local court that has personal jurisdiction over them. Notably, each of the Wayfarer Third Parties is a private individual, not a multinational corporation or a wealthy, globetrotting celebrity—a factor that is "relevant as the Court evaluates any burden imposed." *Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-CV-0708-RFB-NJK, 2014 WL 4079555, at *8 (D. Nev. Aug. 15, 2014).

## 2. The Court Need Not, and Should Not, Enter an Order Compelling Compliance with the Subpoenas.

This Court should not compel compliance with the Subpoenas because such an order is unnecessary. The Wayfarer Third Parties have advised Lively, time and time again, that they are presently engaged in a good-faith effort to comply with the Subpoenas and that they anticipate completing those efforts by July 1, 2025 at the latest, the date for substantial completion of production of documents in the underly Southern District of New York action. Declaration of Summer Benson ("Benson Decl."), Exs. 1-2.

The delay is justified as the subpoenas are not simple requests for one or two documents. Each of the eight subpoenas contains 14 pages of definitions and instructions, including complex ESI protocols, and seeks up to 26 different categories of documents for production. Declaration of Esra Hudson ("Hudson Decl."), Exs. C-J. The initial dates of compliance provided a maximum of 20 days

to comply, with some subpoenas allowing even less time. *Id.* Some requests are extremely broad, relating to months of phone records, although allowed that "non-responsive information may be redacted." *See*, *e.g.*, *Id.*, Exs. C-F at Nos. 25-26. Other requests seek months of communication about a wide variety of subjects. *Id.* at No. 1 (All documents and communications related to Lively, Ryan Reynolds, their companies, or their families); No. 2 (All documents and communications related to the film It Ends With Us). Lively fails to mention the burden such preparation for production entails.

      The Wayfarer Third Parties nonetheless agreed to produce the responsive, non-privileged documents in their possession, custody and control, despite the burden that such a production carries. A substantial volume of data has been collected from Wayfarer's servers, databases, and other repositories, and is being reviewed and produced on a rolling basis, a process that has already begun. To date, Wayfarer itself has made multiple productions, including productions of emails and other professional materials for the subpoenaed custodians. Benson Decl., Ex. 1. Counsel expects to complete production by the July 1, 2025 substantial completion of document production date.

      Rather than allow the Wayfarer Third Parties the time needed to fully comply with the subpoenas, Lively has rushed into multiple Courts, insinuating that these third parties are purposely moving slowly in some kind of coordinated effort with Defendants in the main action. Lively is mistaken. Wayfarer encourages production of the responsive documents as they will evidence the falsity of Lively's allegations. However, the Wayfarer Third Parties needed more than a few weeks to image and produce all of the documents responsive to the 177 requests.

      Regarding materials within the sole possession, custody, or control of the Wayfarer Third Parties, all relevant personal devices of the subpoenaed individuals have been forensically collected, where applicable. These substantial data sets are

currently undergoing priority review, and the collected documents that are responsive and non-privileged will be produced in accordance with the ESI stipulation in the Southern District of New York action. Counsel anticipates completing these productions by June 27, 2025, but in no event later than July 1, 2025.

For these reasons, the Wayfarer Third Parties respectfully request that the Court deny Lively's Motion.

Respectfully submitted,

Dated: June 20, 2025

MANATT, PHELPS & PHILLIPS, LLP

/s/ Esra A. Hudson
Esra A. Hudson
Stephanie A. Roeser
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

*Attorneys for Movant Blake Lively*

Dated: June 20, 2025

LINER FREEDMAN TAITELMAN + COOLEY, LLP

/s/ Ellyn S. Garofalo
Bryan J. Freedman
Ellyn S. Garofalo
Miles M. Cooley
Theresa M. Troupson
Summer Benson
Jason Sunshine
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
(310) 201-0005
bfreedman@lftcllp.com

mcooley@lftcllp.com
ttroupson@lftcllp.com
sbenson@lftcllp.com
jsunshine@lftcllp.com

*Attorneys for Respondents Tera Hanks, Ashmi Elizabeth Dang, Ahmed Musiol, Mitz Toskovic, AJ Marbory, Jennifer Benson, Shekinah Reese, and Jarriesse Blackmon*