# EXHIBIT F

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
Southern District of New York

| | | |
|---|---|---|
| Blake Lively, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:24-cv-10049; 1:25-cv-00449 |
| Wayfarer Studios LLC, et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                            Ashmi Dang

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Willkie Farr & Gallagher LLP, 2029 Century Park E, Los Angeles, CA 90067 (kbender@willkie.com) | Date and Time:<br><br>03/24/2025 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     03/04/2025

*CLERK OF COURT*

OR

|  |  |
|---|---|
| _____ | /s/ Michael Gottlieb |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Blake Lively
_____ , who issues or requests this subpoena, are:

Michael Gottlieb, Willkie Farr & Gallagher LLP, 1875 K Street NW #100, Washington, DC 20006, mgottlieb@willkie.com, (202) 303-1442; Kristin Bender, Willkie Farr & Gallagher LLP, 1875 K Street NW, kbender@willkie.com, (202) 303-1245

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:24-cv-10049; 1:25-cv-00449

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Attachment A**

## DEFINITIONS

1.      The Uniform Definitions in Discovery Requests that are set forth in Local Civil Rule 26.3 are hereby incorporated by reference.

2.      "Actions" means and collectively refers to the following cases entitled (a) *Lively v. Wayfarer Studios LLC et al.*, U.S. District Court for the Southern District of New York (Case No. 1:24-cv-10049-LJL); (b) *Wayfarer Studios LLC et al. v. Lively et al.*, U.S. District Court for the Southern District of New York (Case No. 1:25-cv-00449-LJL); (c) *Wayfarer Studios LLC et al. v. The New York Times Company*, Superior Court of California, County of Los Angeles (Case No. 24STCV34662); (d) *Jones v. Jennifer Abel et al.*, United States District Court for the Southern District of New York (NYS Case No. 659849/2024; SDNY Case No. 1:25-cv-00779), and/or (e) *Wallace et al. v. Lively*, United States District Court for the Western District of Texas (Case No. 1:25-cv-00163-DAE), as well the factual allegations or claims contained in all pleadings.

3.      "Agreement" means any contract, arrangement, or understanding, formal or informal, oral or written.

4.      "Affiliate" means any and all entities that are wholly owned and/or controlled (directly or indirectly) by, or under common control by an identified individual or entity, including any corporate parent, subsidiaries, or affiliates, and each of their respective officers, directors, employees, or partners.

5.      The terms "all," "any," and "each" shall each be construed as encompassing any and all. *See* Local Civil Rule 26.3.

6.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope. *See* Local Civil Rule 26.3.

7.      "Abel" refers to Jennifer Abel, who is a party to the Action.

1

8.      "Baldoni" refers to Justin Baldoni, who currently serves as the co-founder and co-chairman of Wayfarer Studios LLC and is a party to the Action.

9.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). *See* Local Civil Rule 26.3.

10.     "Lively Complaint" means the operative complaint filed by Blake Lively in *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL, Dkt. No. 1, the amended complaint, Dkt. No. 84, and any amended complaints filed by Blake Lively in the proceeding.

11.     The "CRD Complaint" means the operative administrative complaint filed by Blake Lively with the California Civil Rights Department on December 20, 2024.

12.     "Concerning" means relating to, referring to, describing, evidencing, or constituting. *See* Local Civil Rule 26.3.

13.     "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term. *See* Local Civil Rule 26.3.

14.     The "Film" means the movie "It Ends with Us," co-starring Blake Lively and Justin Baldoni, as described in the Lively Complaint.

15.     "Bryan Freedman" refers to counsel for the Wayfarer Defendants in the Action, as well as his past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

16.     "Heath" refers to Jamey Heath who currently serves as the CEO of Wayfarer Studios LLC and is a party to the Action.

17.     "Including" means "including, but not limited to," or "including, without limitation," and should not be construed as limiting any request.

18.     "IEWU LLC" shall refer to Defendant It Ends With Us Movie LLC, which is a party to this Action, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

19.     "Jonesworks" shall refer to the entity Joneworks LLC, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates, including, without limitation, Stephanie Jones.

20.     "Jonesworks Complaint" means the operative complaint filed by Stephanie Jones and Jonesworks LLC in *Jones v. Jennifer Abel et al.* and removed to the United States District Court for the Southern District of New York (NYS Case No. 659849/2024; SDNY Case No. 1:25-cv-00779), Dkt. No. 1, and any amended complaints filed by Stephanie Jones and/or Jonesworks LLC in the proceeding.

21.     "Liner Freedman Taitelman + Cooley" refers to the law firm serving as counsel for the Wayfarer Defendants in the Action as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

22.     "Lively/Reynolds Companies" shall refer to Ms. Lively and Mr. Reynolds's affiliated entities, including but not limited to Betty Buzz LLC, Blake Brown, Aviation Gin, Mint Mobile, and Maximum Effort Productions, individually and collectively, and their past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

23.     "Ms. Lively" shall refer to Blake Lively, who is a party to this Action.

24.     "Mr. Reynolds" shall refer to Ryan Reynolds, who is a party to this Action.

25.     "Marketing Plan" shall refer to any efforts to market or promote the Film, including, but not limited to, any advertising, promotional, publicity or marketing materials (such as, without limitation, themes, market testing, research, summaries, talking points, trailers or teasers, posters, social media posts, and screen, radio, digital or television advertising), as described in Lively the Complaint.

26.     "Nathan" shall refer to Melissa Nathan, who is a party to the Action.

27.     The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation. *See* Local Civil Rule 26.3.

28.     "Payment" is defined as any transfer or commitment for future transfer of anything of value, including the exchange of funds (whether in dollars, foreign currency, or any form of electronic or cryptocurrency), cash, securities, loans, reimbursements, refunds, accounting corrections, retainers, goods, services, or otherwise.

29.     "Person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or associate. *See* Local Civil Rule 26.3.

30.     "Protections for Return to Production Agreement" means the contract executed in November 2023 concerning appropriate behavior during filming and production of the Film, as described in the Lively Complaint.

31.     "Digital Campaign" refers to efforts of the Wayfarer Defendants and/or any affiliates, employees, associates, or subcontractors to communicate information regarding Blake Lively, Ryan Reynolds, the Lively/Reynolds Companies, the Lively/Reynolds Family, the

Wayfarer Defendants, the Film, or the Actions on any Social Media, news outlet, or other internet platform and/or to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narrative or virality, as well as the use of bots or inauthentic accounts, as described in the Lively Complaint.

32.    "Relating to" or "Relate to" means, without limitation, assessing, comprising, constituting, concerning, referring to, containing, describing, discussing, embodying, evidencing, identifying, pertaining to, reflecting, stating, supporting, or tending to support or refute, or referring in any other way, directly or indirectly, in whole or in part, to the subject matter specified.

33.    "Social Media" means any digital platform, forum, website, application, online service, or other platform on which persons can create, transmit, share, communicate, exchange content, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to:

a.    Social Networking Platforms – Facebook, Instagram, Twitter (X), LinkedIn, TikTok, Snapchat, Reddit, and similar platforms.

b.    Content Sharing & Video Platforms – YouTube, Vimeo, Twitch, Rumble, or similar services where videos, reels, or live content can be uploaded or streamed.

c.    Email, Messaging Applications & Direct Communication Platforms – Including, but not limited to, Gmail, Outlook, WhatsApp, Telegram, Signal, Discord, Slack, Facebook Messenger, Instagram DMs, Twitter DMs, or any private messaging feature within a social media platform.

d.    Blogging & Forum Sites – Medium, Substack, WordPress, 4chan, 8kun, or any other user-generated content site where written materials are published.

e.     Influencer & Review-Based Platforms – Yelp, Glassdoor, Trustpilot, Google Reviews, Patreon, or any website where reputational impact can be influenced.

f.     Advertising & Promotional Services – Paid sponsorships, influencer partnerships, promoted posts, advertisements, bots, or algorithm-driven visibility campaigns.

g.     Automated or Third-Party Content Management Tools – Hootsuite, Buffer, Sprout Social, or any platform used to schedule, automate, or track social media activity.

h.     Any Other Online Presence – Any additional websites, forums, private groups, or digital spaces where content related to Plaintiff was discussed, posted, or promoted.

i.     Without limiting the foregoing in any manner, and by way of example only, this definition includes: all original posts, reposts, shares, likes, comments, hashtags, memes, images, videos, stories, threads, and reactions; all drafts, deleted posts, or unpublished content related to Plaintiff; all engagement metrics, analytics, reports, or logs reflecting interactions with content; and all metadata, timestamps, IP addresses, geolocation data, or user activity logs related to content.

34.     "Content Creator" shall refer to any individual or entity who seeds, generates, creates, or influences Social Media content or provides related digital services.

35.     "Sony" shall refer to Sony Pictures Entertainment, and its past or present officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

36.    "Sarowitz" shall refer to Steve Sarowitz, who is a party to the Action.

37.    "Street Relations" shall refer to the entity Street Relations, Inc., who is a party to this Action, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates, including, without limitation, Jed Wallace.

38.    "TAG" shall refer to The Agency Group PR LLC, which is a party to the Action, and its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

39.    "Vision PR Parties" refers to Defendants Leslie Sloane and Vision PR, Inc., in *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL.

40.    "Wallace" shall refer to Jed Wallace, who is a party to the Action.

41.    "Wayfarer" shall refer to Defendant Wayfarer Studios LLC, and its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

42.    "Wayfarer SDNY Complaint" shall refer to the Complaint, Dkt. No. 1, the First Amended Complaint, Dkt. No. 50, and any other amended complaints filed by Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, It Ends with Us Movie LLC, Melissa Nathan, and Jennifer Abel in *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL, as consolidated.

43.    "Wayfarer New York Times Action" shall refer to the lawsuit entitled *Wayfarer Studios LLC et al. v. The New York Times Company*, No. 24STCV34662, filed in the Superior Court of California, County of Los Angeles.

44.    "Wayfarer Defendants" shall refer, individually and collectively, to Wayfarer, Baldoni, Heath, Sarowitz, Nathan, TAG, Abel, Wallace, and Street Relations.

45.    "WME" shall refer to William Morris Endeavor Entertainment Agency, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

46.     "You," "Your," or "Yours" refers to Ashmi Dang and includes any persons or entities acting for her or on her behalf, including but not limited to all representatives, servants, agents, employees, officers, affiliates, subsidiaries, parent companies, third parties, as well as any entities over which she has control.

## INSTRUCTIONS

1.     In addition to the specific instructions below, these Requests incorporate by reference the instructions set forth in Rule 45 of the Federal Rules of Civil Procedure.

2.     In responding to these Requests, You shall make a diligent search and produce all responsive Documents that are (i) in Your possession, custody, or control, or (ii) in the possession, custody, or control of any of Your agents, employees, attorneys, accountants, or other representatives or anyone acting on Your behalf, or under Your direction or control, or (iii) otherwise available to You. A Document shall be deemed within Your control if You have the right to secure the document or a copy of the Document from another Person having possession, custody, or control of the Document.

3.     Unless otherwise specified, each Request concerns the time period from December 1, 2022 through the present.

4.     In construing these Requests, You should give effect to the Definitions set forth above. Undefined words and terms shall be given their common meaning. If You are unsure of the definition of a particular term or word, use the definition that You believe to be the most accurate and state that definition in Your response.

5.     If You do not clearly understand, or have any questions about the definitions or instructions for any Request, please promptly contact counsel for Ms. Lively for clarification.

6.     These Requests should be construed as broadly as possible with all doubts resolved in favor of production. If you believe a Request is ambiguous, use the broadest reasonable

interpretation as permitted under the Federal Rules of Civil Procedure and state the nature of the perceived ambiguity and the interpretation used to resolve it. The words "all," "any," "each," "and," and "or" shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive. Except as specifically provided in these Requests, words imparting the singular shall include plural, and vice versa, where appropriate. Except as specifically provided in these Requests, words imparting the present tense shall also include the past and future tense and vice versa, where appropriate.

7.      For any hard copy production, all documents produced shall be produced as kept in the ordinary course, including identification of the applicable file folder and source. The original of each document requested shall be produced, or an identical copy of each document, imprinted with a Bates identification number. Documents attached to other documents or materials shall not be separated. Documents not otherwise responsive to these requests shall be produced if such documents are attached to documents called for by the Requests and constitute routing slips, transmittal memoranda, letters, emails, comments, evaluations, or similar materials, or mention, discuss, refer to, or explain the documents that are called for by the Requests.

8.      For any hard copy production, identical copies of a document need not be produced. Any copy of a document that varies from the original, whether by reason of handwritten or other notation or any omission, or metadata associated with a file, shall constitute a separate document and must be produced, whether or not the original of such a document is within your possession, custody, or control.

9.      If an objection is made to any portion of any Request, (a) state with specificity the objection and legal basis for such objection; (b) state whether any responsive materials are being

withheld on the basis of that objection; and (c) answer all remaining portions of the Request to which an objection is not asserted.

10.    If any responsive document is withheld in whole or in part under a claim of privilege or other ground, as to each such document, identify the privilege or other ground being asserted and provide the following information in sufficient detail to permit the Court to evaluate Your claim:

a.    date, author, addressees, Persons carbon copied or blind carbon copied, including the relationship of those Persons to You or the author of the document;

b.    brief description sufficient to identify the type, subject matter, and purpose of the document;

c.    all Persons to whom the document's contents have been disclosed;

d.    the party who is asserting the privilege;

e.    the nature of the privilege, immunity or protection asserted, the Person(s);

f.    asserting the privilege, immunity or protection, and/or the specific reason why the Document is not being produced; and

g.    the same information referenced in 10(a)-(f) above for each enclosure or attachment to each listed document if the enclosure or attachment is also withheld from production.

11.    If a portion of any responsive document is withheld under a claim of privilege or other ground, any non-privileged portion of the document must be produced with the withheld portion redacted, with the redaction language indicating that the information is being withheld for privilege.

12.     If any responsive document was, but no longer is, in Your possession, custody, or control, state whether it is (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of; and (e) in each instance identify the contents, author(s), date prepared or received, name and address of its current or last known custodian, and the date and circumstances surrounding such disposition.

13.     To the extent that the native format for transactional or other data responsive to these Requests is not compatible with Microsoft Office products (*e.g.*, Microsoft Excel, Microsoft Word, Microsoft Access, etc.), the data shall be produced in a usable format. If You need assistance in determining what constitutes a usable format, You shall promptly contact Ms. Lively's counsel.

14.     These Requests are continuing in nature and all documents coming into Your possession, custody or control which would have been produced had they been available earlier shall be produced forthwith.

15.     Notwithstanding anything else to the contrary herein, each word, term, or phrase is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

## PRODUCTION OF ESI

1.     Format: ESI should be produced in load-ready standard format, including single-page, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet and presentation type files, audio and video files, and Documents with tracked changes reflected in the metadata, which should be produced in native format. If an original Document contains color, the Document should be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting so as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs should show any and all text and images that would be visible to the reader using the native software that created the Document. For example, TIFFs/JPGs of sent email messages should include the BCC line.

11

2.      Format – Native Files: Spreadsheets (*e.g.*, Excel, Lotus, Google Sheets, CSV) and Media files (*e.g.*, .WAV, .MP3, .MP4, .MOV, .WMV, .MPEG), shall be produced in Native Format, except where such files are redacted. For Google Documents, production of an export in a comparable format will constitute native production (*e.g.*, Google Sheets Document exported in Microsoft Excel format). A TIFF placeholder endorsed with the corresponding Bates number and confidentiality designation (if any) shall be produced for all ESI produced in Native Format.

3.      Word Documents and PowerPoint Documents shall be produced in both native and TIFF format, with track changes and speaker notes imaged.

4.      De-Duplication: Each party shall remove exact duplicate Documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. De-duplication should be done across the entire collection (global de-duplication) and the ALL CUSTODIAN field should list each custodian, separated by a semicolon, who was a source of that Document and the FILEPATH field will list each file path, separated by a semicolon, that was a source of that Document. Should the ALL CUSTODIAN or FILEPATH metadata fields produced become outdated due to processing of additional data or production of documents of additional custodians, an overlay file providing all the custodians and file paths for the affected Documents should be produced prior to substantial completion of the Document production.

5.      Technology-Assisted Review/Analytics: Predictive coding/technology-assisted review shall not be used for the purpose of culling the Documents to be reviewed or produced

without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding an agreeable protocol for the use of such technologies. Before threading is used to reduce the volume of emails to review, the producing party shall reach out to Ms. Lively's counsel to ensure the process being utilized by the vendor is industry standard. If it is agreed that threading may be used to reduce the volume of documents to produce, the producing party shall produce the Inclusive emails, defined as those emails within an email thread containing all unique content as determined by commonly accepted analytics tools. An additional metadata field containing the *Thread ID* shall be produced so that Inclusive emails can be reviewed together. The requesting party may request the production of a lesser-included email or emails, and any such reasonable request(s) shall not be refused where the Document is available in the producing party's Document collection.

6.      Metadata: Metadata produced will include the following fields of information, to the extent such information exists and can be readily provided through reasonable efforts: BegBates, EndBates, AttachRange, BegAttach, EndAttach, ParentID, ChildID(s), AllCustodian, FilePath, Subject, From, To, CC, BCC, DateSent, TimeSent, DateReceived, TimeReceived, FileType (*e.g.*, Email, Attachment, Loose File, Hard Copy), FileName, Author, DateCreated, DateModified, MD5 Hash (or SHA-1, whichever is used for deduplication), File Size, FileExtension, DocLink, and TextPath.

7.      Message Metadata: In addition to the fields listed in Section 6 above, Metadata for text and chat messages produced will include the following fields of information, to the extent such information exists and can be readily provided through reasonable efforts: Message Thread ID, Message Participants, Message From, Message To, Message DateTime Sent, Message

Application Name (*e.g.*, Signal, WhatsApp, etc.)., Message Deleted, Message Deleted on, Message Deleted By, Message Edited, Message Edited On, Message Edited By.

8.  Attachments: If any part of an email or its attachments is responsive, the entire email and attachments should be produced, except any information to be redacted on the basis of privilege. The parties should meet and confer about whether there is an appropriate basis for withholding a family Document for any reason other than attorney-client or work product privilege. The attachments should be produced sequentially after the parent email.

9.  Compressed File Types: Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level Document or file is extracted.

10.  Structured Data: To the extent a response to discovery requires production of electronic information stored in a database, the parties should meet and confer regarding methods of production. Parties should consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

11.  Encryption: To maximize the security of information in transit, any media on which Documents are produced may be encrypted. In such cases, the producing party shall transmit productions via SFTP. If that is not possible, parties should discuss with counsel for Ms. Lively and transmit the encryption key or password to the receiving party, or by phone call or text message, contemporaneously with sending the encrypted media.

12.  Redactions: If excels are to be redacted, redactions must be applied natively. If other Documents that the parties have agreed to produce only in native format need to be redacted, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

## DOCUMENTS TO BE PRODUCED

**REQUEST FOR PRODUCTION NO. 1:**

All Documents and Communications concerning Ms. Lively, Mr. Reynolds, the Lively/Reynolds Companies, or the Lively/Reynolds Family.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents and Communications concerning the Film or the Marketing Plan.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents and Communications concerning Social Media related to Lively, Baldoni, or the Film.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents and Communications concerning the Digital Campaign.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications concerning the Scenario Planning Document, attached as Exhibit D to the Lively Complaint.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Communications concerning any meeting related to the Scenario Planning Document, attached as Exhibit D to the Lively Complaint.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications concerning the Actions.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications concerning Ms. Lively's request(s) for protections to return to production, as alleged in paragraphs 16-18 of the Lively Complaint and set forth Exhibit A thereto.

15

**REQUEST FOR PRODUCTION NO. 9:**

All Documents and Communications concerning any meeting related to Ms. Lively's request(s) for protections to return to production, as alleged in paragraphs 16-22, 146-48, 153-58 of the Lively Complaint and set forth Exhibit A thereto.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents and Communications concerning the January 4, 2024 meeting, as alleged in paragraphs 16-22, 146-48, 153-58 of the Lively Complaint.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents and Communications concerning any allegations, concerns, grievances, complaints, or reports raised by Ms. Lively in connection with production of the Film.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents and Communications concerning any meeting related to allegations, concerns, grievances, complaints, or reports raised by Ms. Lively, including on or about August 4, 2024.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents and Communications with TAG or Nathan.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents and Communications concerning any meeting involving or concerning TAG or Nathan.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents and Communications concerning services provided or proposed to be provided by TAG or Melissa Nathan.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Communications concerning any meeting, including calls, video calls, or teleconferences, involving or concerning Street Relations or Wallace.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents and Communications with Wallace or Street Relations.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents and Communications concerning services provided or proposed to be provided by Street Relations or Wallace.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents and Communications regarding the decision to hire or work with Freedman or Liner Freedman Taitelman + Cooley.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents and Communications between You and Kjersti Flaa.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents and Communications between You and any Content Creator concerning the Actions, Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, or the Film.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents and Communications concerning any actual, alleged, or suspected harassment, discrimination, retaliation, workplace misconduct, or other inappropriate behavior related to the Film.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents and Communications concerning any actual, alleged, or suspected harassment, discrimination, retaliation, workplace misconduct, or other inappropriate behavior related by Baldoni.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents and Communications concerning any actual, alleged, or suspected harassment, discrimination, retaliation, workplace misconduct, or other inappropriate behavior related by Heath.

**REQUEST FOR PRODUCTION NO. 25:**

Documents, such as phone records, sufficient to show all phone numbers and phone service providers You used from May 1, 2024, to the present. Non-responsive information may be redacted.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents, including mobile phone billing records, sufficient to show the calls You made or received relating to the allegations in the Lively Complaint from May 1, 2024, to the present. Non-responsive information may be redacted.